**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

GREGORY MARK NAIRN,

       Defendant.

No. **CR02-4078MWB**

**REPORT AND RECOMMENDATION
ON APPLICATION PURSUANT TO
28 U.S.C. § 2255**

---

### *TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

II.   **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

     A.   *Standards for Relief Under 28 U.S.C. § 2255* . . . . . . . . . . . . . . . . . . . **4**

     B.   *Ineffective Assistance of Counsel - Advice to Plead Guilty* . . . . . . . . . . . **7**

     C.   *Ineffective Assistance of Counsel - Advice on the Elements and
         Factual Basis for a Guilt Plea to Count 2* . . . . . . . . . . . . . . . . . . . . . **9**

         1.  *Deficient performance by counsel* . . . . . . . . . . . . . . . . . . . . . . . **21**

         2.  *Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

III.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

# I. INTRODUCTION

On December 3, 2002, the defendant Gregory Mark Nairn ("Nairn") pled guilty to a three-count superseding indictment before the undersigned magistrate judge.[1] In Count 1 of the indictment, Nairn was charged with conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 841 & 846; in Count 2, he was charged with possession of firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and in Count 3, he was charged with being an unlawful user of methamphetamine in possession of firearms, in violation of 18 U.S.C. § 922(g)(3).

On February 27, 2003, Nairn was sentenced to 120 months' imprisonment on Count 1, the statutory mandatory minimum sentence; 60 months' imprisonment on Count 2, also the statutory mandatory minimum sentence, to be served consecutively to the sentence on Count 1, as required by statute; and 24 months' imprisonment on Count 3, to be served concurrently with the sentence on Count 1. Nairn appealed to the Eighth Circuit Court of Appeals and raised two sentencing issues not raised before the trial court. The appeals court affirmed Nairn's conviction on September 26, 2003.

On August 4, 2004, Nairn filed an application under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Doc. No. 70. In his application, Nairn challenged the validity of his conviction, alleging (1) he was denied the effective assistance of counsel in three respects; *see* Doc. No. 70-1, Grounds One, Two, and Four; and (2) the sentencing judge, the Honorable Mark W. Bennett, erred in failing to exercise his discretion and apply a mitigating-role reduction to reduce Nairn's statutory minimum sentence; *id.*, Ground Three. On August 6, 2004, Chief Judge Bennett ruled against

---

[1] The superseding indictment sometimes will be referred to hereinafter simply as "the indictment."

Nairn on Ground Three, but referred Nairn's ineffective assistance of counsel claims to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the claim. Doc. No. 72. On August 9, 2004, the court granted Nairn's motion for a court-appointed attorney, and attorney F. David Eastman was appointed to represent Nairn.

On November 11, 2004, the court held an evidentiary hearing on Nairn's application. Nairn was present at the hearing with his attorney, Mr. Eastman. The plaintiff ("the Government") was represented by Assistant United States Attorney Kevin Fletcher.

Although Nairn raised several issues in his application, Mr. Eastman advised the court at the beginning of the hearing that his client was pursuing only one issue; *i.e.*, whether, during the guilty plea hearing, Nairn was denied effective assistance of counsel when his attorney failed to advise him that the court (a) had stated the elements of Count 2 of the indictment incorrectly, and (b) as a result, had improperly determined that there was a factual basis in the record for Nairn to plead guilty to Count 2.[2] *See* Fed. R. Crim. P. 11(b)(1)(G)[3] and Fed. R. Crim. P. 11(b)(3).[4] Later in the hearing, Nairn's attorney clarified that his client also was continuing to pursue an additional claim of ineffective assistance of counsel, alleging that he pled guilty to Count 2 of the indictment

---

[2]Mr. Eastman stated, "[This] is the only issue that I'm pursuing, Judge. That's the only thing that in talking to Mr. Nairn and going through the petition that he prepared that I found that was anything other than frivolous." Hr. Tr. 13.

[3]"[T]he court must inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading[.]"

[4]"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

only because of poor legal advice given to him by his trial attorney. Hr. Tr. 33-35, 39-40.[5]

The court held a supplemental hearing on April 12, 2005, for the purpose of clarifying the issues Nairn is pursuing in this matter. Having now considered carefully the arguments of counsel, relevant legal authorities, and the record as a whole, the court makes the following recommended disposition of this case.

## II. LEGAL ANALYSIS

### A. Standards for Relief Under 28 U.S.C. § 2255

Section 2255 is "the statutory analogue of *habeas corpus* for persons in federal custody." *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987). The statute provides a remedy in the sentencing court, as opposed to *habeas corpus*, which lies in the district of confinement. *Id.* In a section 2255 proceeding, a prisoner may raise claims that "a sentence was 'imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.'" *Id.* (quoting 28 U.S.C. § 2255).

A collateral challenge under section 2255 is not interchangeable with or a substitute for direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982); *see also Kaufman v. United States*, 394 U.S. 217, 89 S. Ct. 1068, 22 L. Ed. 2d 227 (1969) (denying section 2255 relief where prisoner had no

---

[5]Among other things, Nairn alleged in his motion that his counsel was ineffective because his counsel had been using illicit drugs while representing Nairn. *See* Doc. No. 70-1, Ground One, supporting facts. Because Nairn did not mention in any of his arguments or in his brief his trial attorney's alleged use of illicit drugs, the court concludes Nairn has abandoned any claim that his counsel's alleged use of illicit drugs resulted in ineffective assistance of counsel.

good cause for failing to raise issues on direct appeal); *Poor Thunder*, 810 F.2d at 823 ("[s]ection 2255 motions are no substitute for appeal, and normally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief"). An error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. *Frady*, 456 U.S. at 165, 102 S. Ct. at 1593 (citing *United States v. Addonizio*, 442 U.S. 178, 184, 99 S. Ct. 2235, 2240, 60 L. Ed. 2d 805 (1979)).

It is a well-settled principle that to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal. *Frady*, 456 U.S. at 166, 102 S. Ct. at 1593. While direct appeal is the exclusive route for complaining about trial errors significant enough to require reversal, section 2255 is intended to rectify "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Poor Thunder*, 810 F.2d at 821-22 (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417 (1962)).

Issues not raised on direct appeal generally will not be considered in a section 2255 proceeding except to prevent "manifest injustice." *United States v. Serpa*, 930 F.2d 639, 640 (8th Cir. 1991); *United States v. Samuelson*, 722 F.2d 425, 427 (8th Cir. 1983). However, "[i]neffective assistance of counsel claims are not normally considered on direct appeal because, as here, the factual basis has not been adequately developed. *United States v. Jones*, 121 F.3d 369, 370 (8th Cir. 1997). The proper procedural mechanism for such a claim is a motion under 28 U.S.C. § 2255. *United States v. Payton*, 168 F.3d 1103, 1105 n.2 (8th Cir. 1999)." *United States v. Enriquez*, 205 F.3d 345, 348 (8th Cir. 2000).

The Eighth Circuit Court of Appeals has discussed the hurdle a defendant must surmount in order to withdraw a guilty plea on the basis of ineffective assistance of counsel, as follows:

> The determination of whether a defendant may withdraw a guilty plea is left to the sound discretion of the trial court. *See, e.g., United States. v. Newson*, 46 F.3d 730, 732 (8th Cir. 1996). A defendant may withdraw his plea only if he has a "fair and just reason" to do so. *See* Fed. R. Crim. P. 32(e) and *United States v. Capito*, 992 F.2d 218, 219 (8th Cir. 1993). Defense counsel's performance can serve as the requisite "fair and just reason" for withdrawal only if [the defendant] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370-71, 88 L. Ed. 2d 203 (1985). That is, he must prove "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S. Ct. at 370.

*United States v. McMullen*, 86 F.3d 135, 137 (8th Cir. 1996).

The defendant's burden is considerable because "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.'" *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984) (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)). Notably, "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067.

With these standards in mind, the court turns to consideration of Nairn's ineffective assistance of counsel claims.

### B. Ineffective Assistance of Counsel – Advice to Plead Guilty

Nairn claims his trial counsel, Dewey Sloan, Jr., gave him poor legal advice when he recommended that Nairn plead guilty to Count 2 of the indictment. According to Nairn, he pled guilty to Count 2 only because Mr. Sloan told him he would be sentenced to "at least 30 years to life" if he did not plead. Hr. Tr. p. 16. Nairn also testified that when he pled guilty to Count 2, he thought he was pleading only to possession of the firearms, but not to possession of the firearms in connection with a crime. Hr. Tr. pp. 17-18. Also, according to Nairn, Mr. Sloan told him he would take care of Count 2 on appeal. *Id.*

The court does not credit Nairn's testimony on this issue. With regard to each of these allegations, the court provided different information to Nairn during the plea hearing, and Nairn indicated he understood and had no questions about what he was told. As discussed below, the court advised Nairn of the likely sentencing range in this case, which was far below 30 years. The court also advised Nairn that a conviction on Count 2 required proof of matters in addition to mere possession of a firearm. Finally, the court advised Nairn that if he pled guilty to Count 2, it would be "just as if a jury had returned a guilty verdict" against him on the charge, and there would be no further hearings except for his sentencing hearing. Plea Hr. Tr. p. 12. This advice is inconsistent with a claim by Nairn that he believed he could back out of his guilty plea to Count 2 by appealing his conviction on the charge.

Instead, the court accepts Mr. Sloan's testimony. During the evidentiary hearing, Mr. Sloan testified as follows in response to questioning by the court:

Q     [By the court] . . . [W]hat did [Nairn] have to lose by not pleading guilty on the gun charge and going to trial?

A [By Mr. Sloan] . . .  Originally when we pled Mr. Nairn was going to debrief, okay?  And he did debrief and that was the advantage of pleading guilty to the charges.

   * * *

Q Was it his intention or your intention or the two of you that he was going to cooperate and get a cooperation motion?

A Absolutely.  Absolutely. . . .

Q Did he agree to cooperate with you?

A Yes, he went in to physically debrief and the problem was, I believe, in the end there was testimony – or there was – in the debriefing the big issue, and it's one that I warned him about going in specifically, that he was with his burglary and I believe Tana Morgan driving around to get pills, okay, and Trooper Clyde, I believe, testified to that at the detention hearing that was also in the notes, okay, and I specifically warned him of that at the debriefing; he denied that and as a result –

Q He wasn't allowed to cooperate because the government didn't believe his debrief?

A Yes. . . .

Hr. Tr. pp. 62-63.

It is entirely reasonable for an attorney to recommend that his client plead guilty to a charge when there is substantial evidence to support the charge and when there is a reasonable possibility his client's sentence would be reduced if the client were to cooperate with law enforcement.  *See United States v. Shah*, 263 F. Supp. 2d 10, 22-24 (D.D.C. 2003).

The fact that the Government chose not to file a motion to reduce Nairn's sentence is not relevant.  An attorney's performance must be evaluated at the time of the representation.  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.  The court will not

"second-guess strategic decisions or exploit the benefits of hindsight." *Anderson v. United States*, 393 F.3d. 749, 753 (8th Cir. 2005) (citing *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)). "When, as here, a defendant pleads guilty on the advice of counsel, he must demonstrate, in order to later claim that his plea was involuntary because of some infirmity in the advice, that the advice was not 'within the range of competence demanded of attorneys in criminal cases.' *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *see also Tollett v. Henderson*, 411 U.S. 258, 266, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973)." *Taylor v. Bowersox*, 329 F.3d 963, 972 (8th Cir. 2003). Even though Nairn's sentence was not reduced on the basis of his cooperation, there is nothing in this record to show Nairn's counsel was deficient in recommending that Nairn plead guilty. *See United States v. Broce*, 488 U.S. 563, 572, 109 S. Ct. 757, 764, 102 L. Ed. 2d 927 (1989) ("'Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 770, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970)). Accordingly, Nairn's argument on this basis must fail.

### C.  Ineffective Assistance of Counsel –
### Advice on the Elements and Factual Basis for a Guilty Plea to Count 2

In Count 2, Nairn was charged with the following offense:

> On or about November 27, 2000, in the Northern District of Iowa, the defendant, GREGORY MARK NAIRN, did knowingly possess one or more firearms, that is, a Jennings model J-22 .22 caliber semi-automatic pistol, serial number 096653; and a .270 caliber bolt-action rifle imported by Firearms International, serial number F316; in furtherance of the crime charged in Count 1 of this indictment.

> This was in violation of Title 18, United States Code,
> Sections 924(c)(1)(A) and 924(c)(1)(A)(i).

Doc. No. 18.

Title 18, United States Code, section 924(c)(1)(A), provides, in relevant part, as follows:

> [A]ny person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime[,] . . . be sentenced to a term of imprisonment of not less than 5 years[.]

The statute "criminalizes two separate and distinct offenses"; *i.e.*, (1) using or carrying a firearm during and in relation to a drug offense, and (2) possessing a firearm in furtherance of a drug offense.[6] *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). Nairn points out that, under the language used in Count 2 of the indictment, the grand jury charged only the second of these two distinct offenses -- the possession of a firearm in furtherance of a drug trafficking crime -- and not the first -- the use or carrying of a firearm during and in relation to a drug trafficking crime. He further argues that he received ineffective assistance of counsel when his attorney permitted him to plead guilty to *possession of a firearm during and in relation to* a drug trafficking crime, an offense not consistent with the language of either the statute or the indictment.

---

[6]After the Supreme Court decided *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995), Congress amended 18 U.S.C. § 924(c). Before the amendment, section 924(c) imposed a prison term upon any person who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm." The Court in *Bailey* held "using" a firearm required more than mere possession. *Id.*, 516 U.S. at 143-44, 116 S. Ct. at 506. Congress "'fixed' this problem by adding the possession-in-furtherance-of-a-crime language." *United States v. Alaniz*, 235 F.3d 386, 389 (8th Cir. 2000).

To properly approach this argument, the court first must examine in detail what occurred during the plea colloquy. The undersigned magistrate judge had the following exchanges with Nairn:

> THE COURT: . . . You have the right to plead not guilty and have these charges tried before a jury. You have already pled not guilty. You can persist in your not guilty plea and have a jury trial, even though you have come here today to plead guilty. You can change your mind at any time during this hearing by simply telling me that you don't want to plead guilty, and I will reschedule your case promptly for a jury trial. I am sure we had it on the calendar and took it off because of this plea hearing, but we will put it right back on the calendar in the next few weeks.
>
> Do you understand you have that right?
>
> THE DEFENDANT: Yes.

Plea Hr. Tr. pp. 3-4.

> THE COURT: If you have problems understanding anything that comes up during this hearing, will you please let me know so that I can better explain it to you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: That's not meant to be condescending. Some of these concepts are pretty difficult to understand. Sometimes lawyers even have trouble understanding them, so don't hesitate to ask any questions you might have.

Plea Hr. Tr. pp. 4-5.

> THE COURT: . . . You have the right to a lawyer to help and represent you at every stage of your case, including the pretrial stage, during trial, and after trial, which includes any appeal. If you can't afford a lawyer at any point during your case, you are entitled to a free one.

Mr. Sloan [the defendant's attorney], are you retained or appointed?

MR. SLOAN: Appointed.

THE COURT: Mr. Nairn, have you had the chance to talk with Mr. Sloan and find out everything you want to know about your case?

THE DEFENDANT: Yes, Sir.

THE COURT: Are you satisfied with his representation?

THE DEFENDANT: Yes, sir.

Plea Hr. Tr. p. 8.

THE COURT: If you plead guilty, there will be no trial; you will have waived all the trial rights I just described to you, and you will be adjudged guilty based on your plea, just as if a jury had returned a guilty verdict against you.

There will be no further hearings if you plead guilty except the sentencing hearing, which is a hearing to determine your sentence and not to determine your guilty or innocence.

Do you understand if you plead guilty, you will be giving up your trial rights and you won't have a trial?

THE DEFENDANT: Yes, sir.

Plea Hr. Tr. p. 12.

THE COURT: Do not plead guilty today unless it is what you want to do. After Judge Bennett accepts your plea, it is likely too late to change your mind and decide you want to go to trial.

Do you have any questions about that?

THE DEFENDANT: No, sir.

Plea Hr. Tr. p. 17.

THE COURT: . . . There is no plea agreement here. And I take it there is no cooperation motion contemplated?

MR. FLETCHER [the prosecutor]: The possibility in the future, Your Honor, between now and sentencing.

Plea Hr. Tr. p. 24.

THE COURT: . . . So on Count 1 and Count 2, it is almost for sure that the judge would have to give you at least 15 years. He couldn't give you a sentence below 15 years. Unless the government files a cooperation motion, the judge wouldn't have the power to go below the 15 years.

Do you understand that?

THE DEFENDANT: I believe so, sir.

THE COURT: Do you have any questions about that? Feel free to ask a question, if you want. You can ask your lawyer or you can ask me.

THE DEFENDANT: Yes, sir. I understand.

THE COURT: Do you have any questions you want to ask?

THE DEFENDANT: No, sir.

Plea Hr. Tr. p. 26.

THE COURT: Before I can accept your pleas to these three counts, I have to make sure you understand what the elements are of each count. In other words, what the government would have to prove to the jury in order to convict you. And I also have to make sure there's a factual basis in the record. In other words, that you are actually guilty of the charge before I can let you plead guilty.

Plea Hr. Tr. pp. 28-29.

Referring to the Government's Rule 11 letter (Gov't Ex. 8),[7] the court then had the following exchanges with Nairn:

> THE COURT: Now in the government's letter to the court, the Rule 11 letter, the government states that they had a search warrant for your residence and [a] methamphetamine laboratory and methamphetamine were seized from your residence [and] a vehicle outside of your house. And they also found the handgun and the rifle in the house and both were loaded. They state that the handgun was located on the top of a dresser in the bedroom, and that the handgun was 2 to 3 feet from the methamphetamine in the dresser, and the rifle was in a closet which was just outside the bedroom and about 10 to 12 feet from the methamphetamine. They state that you told the law officers about the gun, and that the guns – and that you knew where they were located.
>
> Are those facts the government has recited in that Rule 11 letter true?
>
> THE DEFENDANT: Yes, sir.

> \* \* \*

---

[7] *See* Local Criminal Rule 11.1(b), providing for "Rule 11" letters. The Government's Rule 11 letter in this case, provides, in pertinent part, as follows:

> **The elements of a violation of 18 U.S.C. § 924(c)(1)(A)(I) in this case are:**
>
> 1. The defendant committed the crime of drug trafficking, as charged in Count 1, conspiracy to manufacture and distribute actual (pure) methamphetamine
>
> 2. During and in relation to the crime of drug trafficking, as charged in Count 1, conspiracy to manufacture and distribute actual (pure) methamphetamine, the defendant, on November 27, 2000, knowingly possessed certain firearms, that is, a Jennings model J-22 .22 caliber semi-automatic pistol, serial number 096653; and a .270 caliber bolt-action rifle imported by Firearms International, serial number F316.

Gov't Ex. 8.

THE COURT: Mr. Nairn, I want to make sure that this is what you want to do. I – I think factually and procedurally in the record there is enough to support going forward with regard to Count 1, but I am getting a sense that you're – you may be just saying things because you want to get this over with and you don't necessarily agree with what you are saying. I want you to know you are under oath, and that you do have a right to a jury trial, and you don't have to say magic words to just get this over with. You can have a jury trial and go forward if you think that's what you want to do.

Is there – is my judgement and sense wrong, or is this really all what you want to do and what you want to say?

THE DEFENDANT: I plead guilty to. I am going ahead with the plea of guilty.

THE COURT: Is there anything else you want to say?

THE DEFENDANT: No, thank you, sir.

THE COURT: Okay. **With respect to Count 2, the government has to prove to a jury, beyond a reasonable doubt, just two things. First of all, they have to prove all of the elements of the Count 1. They have to convict you on the drug conspiracy, and then they have to prove that during – in relationship to the charge in Count 1, you knowingly possessed the firearms that are alleged in Count 2.**

**Do you understand those two elements?**

THE DEFENDANT: **Yes, sir.**

THE COURT: **Is that true, that you knowingly possessed those firearms during and in relationship to the conspiracy charge in Count 1?**

THE DEFENDANT: **Yes, sir.**

THE COURT: I'm sorry?

> THE DEFENDANT: Yes, sir.

Plea Hr. Tr. pp. 32- 34 (emphasis added).

Later, the magistrate judge had the following exchange with the attorneys and Nairn:

> THE COURT: . . . Mr. Fletcher, do you think I explained the elements of these three counts to the defendant?
>
> MR. FLETCHER: Yes, sir.
>
> THE COURT: Do you think there's an adequate factual basis for pleas of guilty to each of these three counts?
>
> MR. FLETCHER: Yes sir.
>
> THE COURT: Mr. Sloan, did I explain the elements correctly?
>
> MR. SLOAN: Yes, Your Honor.
>
> THE COURT: Do you think your client understands the elements of the charges against him?
>
> MR. SLOAN: Yes, Your Honor.
>
> THE COURT: Have you had full access to the government discovery materials?
>
> MR. SLOAN: Yes, Your Honor.
>
> THE COURT: Do you think they support a factual basis for guilty pleas to all three charges?
>
> MR. SLOAN: Yes, Your Honor.
>
> THE COURT: And I note – I'm just feeling some hesitance – not hesitance, but some issues with respect to your client. Is there anything that we should make a record with respect – I don't want you to violate any privileges at all, but I think we made a record. Do you believe [that] your client really – that there is a factual basis for a plea of guilty and what your client –

MR. SLOAN: The information in the discovery file, there is very little question.

THE COURT: Mr. Nairn, do you think it is in your best interest to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone promised you what your sentence will be?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you, forced you or pressured you into pleading guilty?

THE DEFENDANT: No, sir.

THE COURT: Is your plea voluntary?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Sloan, do you believe a plea of guilty by your client to each of the charges against him would be voluntary?

MR. SLOAN: Yes, Your Honor.

THE COURT: Mr. Fletcher, are there any further questions I should ask?

MR. FLETCHER: No, Your Honor.

THE COURT: Mr. Sloan, are there any further questions I should ask?

MR. SLOAN: No, Your Honor.

THE COURT: Mr. Nairn, do you have any questions about anything?

THE DEFENDANT: No, sir.

> THE COURT: Do you still want to plead guilty?
>
> THE DEFENDANT: Yes, sir.

Plea Hr. Tr. pp. 37-39.

Nairn argues that during this colloquy, the court failed to explain the elements of the charge in Count 2 properly, and as a result, the court also failed to ascertain that there was an adequate factual basis for a plea of guilty to the charge.

During the evidentiary hearing on his postconviction application, Nairn testified as follows:

> Q     [By Mr. Eastman] Were those guns [*i.e.,* the guns listed in Count 2] ever used at any time for the purpose of allowing you to acquire drugs?
>
> A     [By Nairn] No.
>
> Q     Or to sell drugs?
>
> A     No.
>
> Q     Or to manufacture drugs?
>
> A     No.
>
> Q     During the time that you worked with Mr. Sloan, your trial counsel, prior to entering your guilty plea on this case did you discuss the elements of Count II?
>
> A     Yes.
>
> Q     And did you discuss the guns?
>
> A     Yes.
>
> Q     Did you discuss what evidence would have to be presented by the government in order to satisfy the element of Count II that requires the guns be either possessed, used, or carried by you?
>
> A     I suggested, you know, I've talked a lot with Mr. Sloan, yes.

Q    Did you at any time tell him that these guns were never used or carried in furtherance of any crime or possessed by you in furtherance of any crime?

A    Many times.

Q    And what was his response to you?

A    That they were just in the vicinity and that was good enough for the government.

         *   *   *

Q    And when you answered the Judge's questions with regard to the facts regarding the guns, what was your understanding as to what you were admitting to with regard to whether those guns had been used or carried or possessed in furtherance of any crime?

A    I was just pleading guilty for possession of guns and drugs more or less, I believe that's –

Q    Was it your understanding at that time that you were admitting to possessing the drugs?

A    I possessed drugs, yes.

Q    And you were admitting to possessing the guns?

A    Yes, sir.

Q    Were you admitting to anything more as far as the use of those guns?

A    No, I talked to Mr. Sloan, he said that he would take care of this probably in appellate court or appellate reasons, that I didn't have nothing to worry about on this.

Q    Did he indicate to you what he meant by that or did you have some discussion between the two of you as to what was going to be appealed?

A    I thought about the in furtherance of a drug crime or I was hoping the whole case would settle.

Q       Had you known at that time when you pled guilty that what
        you had to admit to was the use, carrying, or possession in
        furtherance of a crime, would you have admitted those facts?

A       No, sir.

Hr. Tr. pp. 15-18.

Later, in response to questioning by the court, Nairn stated the following:

> [Mr. Sloan and I] was going through the procedures, come to
> the guns, he leaned over to me, I still wanted to say not guilty
> and take it to trial and he says, "We don't have to worry
> about these guns, I'll take care of it," and I wasn't exactly
> sure what he was meaning by this, but the 924, see, I knew
> was really going to hurt me in the long run. And there was no
> way I guarded the drugs with guns.

Hr. Tr. p. 23.

There are two distinct ways a person can violate 18 United States Code
§ 924(c)(1)(A): (1) by using or carrying a firearm during and in relation to a drug
trafficking crime, or (2) by possessing a firearm in furtherance of a drug trafficking
crime. In Count 2 of the indictment, the grand jury charged Nairn with only the second
way of violating the statute -- possessing a firearm in furtherance of a drug trafficking
crime. The elements the Government would have had to prove at trial to convict Nairn
on this charge were (1) Nairn was in possession of a firearm, and (2) his possession of
the firearm was in furtherance of a drug trafficking crime. During the plea colloquy,
however, the court told Nairn, reading from the Government's Rule 11 letter, that the
Government would have to prove (1) he was in possession of a firearm, and (2) his
possession of the firearm was during and in relation to a drug trafficking crime. This
information was incorrect. Nairn argues he received ineffective assistance of counsel

when his attorney permitted him to plead guilty to Count 2 based on this incorrect statement of the elements of the charge.[8]

During a guilty plea hearing, the court must "inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). Further, before entering judgment on a guilty plea, the court must "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). Here, the court did not inform Nairn correctly of the elements of Count 2 of the indictment, and as a result, the court did not advise Nairn properly of the nature of that charge. Therefore, the court did not accurately determine that there was a factual basis for Nairn to plead guilty to the charge.

In the context of a postconviction action, these facts give rise to the question of whether Nairn's counsel was ineffective in failing to point out to his client the court's errors. As noted previously, for Nairn to be allowed to withdraw his guilty plea on the basis of ineffective assistance of counsel, he must show (1) his attorney's performance was deficient, and (2) he was prejudiced by his attorney's deficient performance. *McMullen*, 86 F.3d at 137.

### 1.    *Deficient performance by counsel*

Stated differently, the question facing the court is whether Nairn's guilty plea was knowing, intelligent, and voluntary, given his counsel's advice or lack of advice regarding the proper elements of the offense to which he was pleading guilty. As the Eighth Circuit Court of Appeals has explained:

---

[8]*But see United States v. Cuervo*, 354 F.3d 969, 990-91 (8th Cir. 2004) (jury instruction that defendant could be convicted under section 924(c)(1)(A) if he used, carried, *or* possessed firearm not prejudicial error).

Because it waives numerous constitutional rights, a guilty plea must be knowing, intelligent, and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *United States v. Brown*, 148 F.3d 1003, 1012 (8th Cir. 1998). A guilty plea must represent a voluntary and intelligent choice among the various options available to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Easter v. Norris*, 100 F.3d 523, 525 (8th Cir. 1996), *cert. denied*, 520 U.S. 1148, 117 S. Ct. 1322, 137 L. Ed. 2d 484 (1977).

A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. *See Henderson v. Morgan*, 426 U.S. 637, 6456 n.13, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976). A plea is involuntary if the defendant did not receive "real notice of the true nature of the charge against him." *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S. Ct. 572, 85 L. Ed. 859 (1941).

*Ivy v. Caspari*, 173 F.3d 1136, 1141-42 (8th Cir. 1999); *see Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609, 140 L. Ed. 2d 828 (1998) (plea cannot be intelligent unless defendant receives "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'") (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S. Ct. 572, 574, 85 L. Ed. 859 (1941)).

However, even if Nairn's counsel failed to advise him of the true nature of the 924(c) charge, "this fact alone does not render his plea of guilty involuntary." *Ault v. United States*, 2000 WL 33339629, at *3 (D.N.D. Sept. 1, 2000) (citing *Schone v. Purkett*, 15 F.3d 785, 789 (8th Cir. 1994)). The court must look to the totality of the circumstances to determine whether Nairn understood the nature of the charges against him. *Id.* (citing *United States v. Marks*, 38 F.3d 1009, 1011 (8th Cir. 1994)). The court

must examine all the sources of Nairn's knowledge regarding the elements of the charge, including whether the indictment gave him notice of the charge, "whether he discussed the charge with his attorney or the judge, and other relevant facts in the record." *Id.*

As discussed above, the indictment properly charged Nairn pursuant to the language of section 924(c)(1)(A); that is, he was charged with possession of a firearm "in furtherance of" a drug offense. *See* Doc. No. 18. Receipt of a copy of a proper indictment, "standing alone, give[s] rise to a presumption that the defendant was informed of the nature of the charge against him." *Bousley*, 523 U.S. at 618, 118 S. Ct. at 1609 (citing *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 2258-59, 49 L. Ed. 2d 108 (1976); *id.* at 650, 96 S. Ct. at 2260 (White, J., concurring)). The court finds Nairn received a copy of the superseding indictment, giving rise to the presumption that he was fully informed of the nature of the crime charged in Count 2.

Further, the evidence indicates Nairn discussed the charge with his attorney, and he continued to maintain that his possession of the firearms was not "in furtherance of" the drug offense. However, when the Government presented its Rule 11 letter to the court, and the court explained the elements of the offense to Nairn, he was advised incorrectly that the Government would have to prove he possessed the firearms "during and in relationship to" the drug conspiracy. Nairn admitted during the plea hearing that he possessed the firearms in Count 2 "during and in relationship to" the drug conspiracy charged in Count 1, but he did not admit that he possessed the firearms "in furtherance of" the drug conspiracy, as was charged in the indictment.

The court finds Nairn's counsel performed ineffectively during the plea hearing by failing to advise his client properly of elements of the charge to which his client was pleading guilty. As a result, Nairn was not on notice of, and did not understand, the true nature of Count 2, with the result that he was unable to make an intelligent and informed

decision to waive his right to trial and enter a plea of guilty to the charge. The Government argues that even though the Rule 11 letter and the court's recitation of the elements of Count 2 were in error, no objection was made to the Government's factual showing at the plea hearing, and Nairn admitted to each of the elements set forth by the Government during that factual recitation. The Government's position ignores the basis for the present action; *i.e.*, that Nairn made those admissions on the basis of ineffective advice of counsel. "A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; ***a guilty plea cannot be a conscious, informed, self-determined choice if the accused relies upon counsel who performed ineffectively in advising him[.]*** " *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir. 1981) (emphasis added) (citing *United States ex rel. Healey v. Cannon*, 553 F.2d 1052, 1056 (7th Cir. 1977)).

Here, Nairn's attorney did not review the elements of Count 2 carefully, or he would have recognized that the Rule 11 letter was wrong and the court had advised Nairn incorrectly as to the elements of the charge. As a result, Nairn's attorney did not explain the elements of Count 2 properly to Nairn, and Nairn did not receive effective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 62, 106 S. Ct. 366, 372, 88 L. Ed. 2d 203 (1985) (attorney's failure to inform client accurately as to relevant law "clearly satisfied the first prong of the *Strickland* analysis . . . [and] such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment.") (quoting *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066). Therefore, Nairn has satisfied the performance prong of the *Strickland* test.

## 2.    *Prejudice*

Nairn also must show he was prejudiced by his counsel's deficient performance. When challenging a guilty plea on the ground of ineffective assistance of counsel, to establish prejudice the defendant also must show there is a reasonable probability that, but for the errors of counsel, he would not have pled guilty and would have proceeded to trial. *Hill*, 474 U.S. at 59, 106 S. Ct. at 370. Here, Nairn must show that if his attorney (and the court) had explained the elements of Count 2 properly, he would not have pled guilty to the charge, but would have proceeded to trial.

During the plea hearing, Nairn admitted he possessed the firearms identified in Count 2 "during and in relationship to" the drug conspiracy charged in Count 1. He did not admit that he possessed the firearms "in furtherance of" the drug conspiracy, as was charged in the indictment. Thus, the question here is whether Nairn, having admitted during the guilty plea colloquy that he possessed the firearms "during and in relationship to" the drug conspiracy, also would have admitted that he possessed the firearms "in furtherance of" the conspiracy. Nairn testified that he would not have done so. Hr. Tr. p. 18.

A prediction as to whether Nairn would have pled guilty or gone to trial should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Hill*, 474 U.S. at 59-60, 106 S. Ct. at 371 (quoting *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068). Generally, an unsupported statement by a defendant that he would not have pled guilty had he received effective representation of counsel is not enough to satisfy the prejudice requirement for allowing the withdrawal of a guilty plea. *See Hill*, 474 U.S. at 58-59, 106 S. Ct. at 370-71. *Compare. Holloway v. United States*, 960 F.2d 1348, 1353 (8th Cir. 1992) (Rule 11 violation does not automatically support a 2255

claim "if the defendant alleges that he had no actual knowledge of the omitted matter and that he would not have pled guilty if he had possessed such knowledge.").

In determining whether Nairn has established that he would, in fact, have persisted with his not-guilty plea and would have gone to trial on Count 2 if he had received effective assistance of counsel during the plea hearing, the court looks to the evidence Nairn would have faced had he gone to trial. *See Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (court must analyze the substance of petitioner's underlying claim, and this inquiry will be dispositive in resolving the habeas action in many guilty plea cases).

On November 27, 2000, officers entered a residence in rural Ida County, Iowa, occupied by Nairn and his girlfriend, to execute a search warrant. When the officers entered the residence, Nairn was in a hallway coming out of the shower, wearing no clothing. The officers told Nairn to get down on the ground, and after first looking and then leaning down the hallway, he complied. Two firearms, which are the subject of both Count 2 and Count 3 of the indictment, were found in the residence during the search. A loaded rifle was found in a hallway closet, about five feet from where Nairn was first observed in the hallway. A loaded handgun was found either in or on top of a dresser in Nairn's bedroom, about fifteen feet from where Nairn was first observed in the hallway. In a post-arrest interview, Nairn told the officers he knew the firearms were in the residence, and he had the firearms because of troubles revolving around his girlfriend. In searching the residence, the officers also found a methamphetamine lab in the basement, and methamphetamine in Nairn's bedroom dresser, two to three feet from the loaded handgun. Hr. Tr. pp. 38-39, 42-45.

On this record, a reasonable jury could have concluded that the firearms were possessed in furtherance of a drug trafficking crime. *See, e.g., United States v. Cuervo*, 354 F.3d 969, 992 (8th Cir. 2004); *United States v. Hamilton*, 332 F.3d 1144, 1149-50

(8th Cir. 2002); *United States v. Swafford*, 385 F.3d 1026, 1028-29 (6th Cir. 2004); *United States v. Sparrow*, 371 F.3d 851, 853 (3rd Cir. 2004); *United States v. Garner*, 338 F.3d 78, 80-81 (1st Cir. 2003); *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002); *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001); *United States v. Ceballos-Torres*, 218 F.3d 409, 412-15 (5th Cir. 2000); *but see United States v. Mann*, 389 F.3d 869, 878-79 (9th Cir. 2004); *United States v. Lawrence*, 308 F.3d 623, 630 (6th Cir. 2002); *United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir. 2001); *United States v. Hall*, 20 F.3d 1084, 1088-90 (10th Cir. 1994). This does not mean, however, that Nairn cannot establish a reasonable, objective probability that a defendant faced with this evidence would have gone to trial on the charge rather than pleading guilty. *See Hill*, 474 U.S. at 59-60, 106 S. Ct. at 371.

The court finds it was not inconsistent for Nairn to claim that although he pled guilty to possession of the firearms during and in relation to a drug trafficking crime, he did not possess the guns in furtherance of a drug trafficking crime. "In furtherance of" is a more stringent requirement than "during and in relation to." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). It is obvious, as he admitted, that Nairn was "in possession of" the firearms "during" a drug trafficking crime – he admitted to possessing the firearms while methamphetamine was in his dresser and a methamphetamine lab was in his basement. He also admitted that he possessed the firearms "in relation to" a drug trafficking crime. However, he never admitted to possession of the firearms "in furtherance of" a drug trafficking crime.

Arguably, from the evidence, a reasonable person in Nairn's position would have known there was a good chance he would be convicted on Count 2. However, such a person also would have known there was a fair chance he might be acquitted. The only risks faced by Nairn in going to trial were (1) the slight risk that he might receive a

sentence longer than the fifteen-year mandatory minimum sentence he would receive after pleading guilty to Count 1 and Count 2, and (2) the risk that he might lose an opportunity to cooperate with the Government and receive the benefits of a substantial assistance motion.[9] After carefully reviewing the facts in this case, the court finds Nairn has established there is a reasonable, objective probability that, after looking at the evidence and being properly advised of the elements of the charge against him, he would not have pled guilty to Count 2, and would have exercised his right to a jury trial on the charge. The court also finds Nairn has established that a reasonable defendant in his position likely would have decided the risks in going to trial on Count 2 were outweighed by the potential benefits to him if he were found not guilty on the charge; specifically, a five-year reduction in his sentence over the sentence he likely would receive if he pled guilty.

Nairn also was prejudiced by the very existence of the conviction on his record, which could result in future sentence enhancements or be used to impeach Nairn's credibility if he testified at a future proceeding. *See United States v. Jones*, ___ F.3d ___, No. 03-2282 (8th Cir. Apr. 12, 2005) ("prejudice can result from the conviction itself"). In addition, the $100 statutory special assessment imposed upon Nairn when he pled guilty to Count 2 "is a collateral consequence of his [plea] that constitutes actual prejudice." *Id.*

For these reasons, the court finds Nairn has shown he was prejudiced by his counsel's failure to advise him of the error in the court's recitation of the elements of Count 2.

Accordingly, because the court finds Nairn has shown both deficient performance by his attorney and resulting prejudice, the court finds Nairn should prevail on his

---

[9]There is nothing in the record to suggest that Nairn would have been denied the opportunity to cooperate because of a decision to plead guilty on Count 1 and go to trial on Count 2.

ineffective assistance of counsel claim, and he should be allowed to withdraw his guilty plea as to Count 2.

## *CONCLUSION*

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections to this Report and Recommendation as specified below, that Nairn's application be **granted**, his guilty plea to Count 2 of the superseding indictment be set aside, the sentence imposed by the court on Count 2 be vacated, and a date be set for trial of Count 2.

Any party who objects to this report and recommendation must serve and file specific, written objections **by no later than April 28, 2005**. Any response to the objections must be served and filed **by May 10, 2005**.

**IT IS SO ORDERED.**

**DATED** this 12th day of April, 2005.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT